Good morning. Good morning. My name is Alan Newdelman. I'm the attorney for Dr. Umali who is present with us this morning. We have indicated that we have 10 minutes and we have two appeals that are pending so I'll try to reserve maybe two minutes and move this on as quickly as I can. Thank you. We have the first appeal that we are looking at this morning and we believe both appeals should be considered by the Ninth Circuit on a de novo basis and if there's questions I'll be happy to answer those on why we believe these are both de novo type reviews. The first one I consider what we call the 180 day appeal and this was pretty much a result of Dr. Umali filed a bankruptcy in District of Arizona. We've got in mind I think this whole history. So I have one question for you on that. You have a very sympathetic case. Thank you. However, how do you justify that in the face of an existing court order that has not yet been lifted, not yet made retroactive or whatever effect it might have had, that he filed yet a third bankruptcy in violation of an existing court order? I don't know how we can overlook that. Well, it's not a matter of overlooking it. It's a matter of how you interpret that and that's why I say de novo review because under the rules which is 9023 of the bankruptcy rules which is similar to basically rule 5960 of the civil rules is that a judge may alter, amend, modify, correct a decision that was made perhaps in error. And what we have is that there was a timely, remember a timely motion to reconsider Judge Barry Russell's decision in the California bankruptcy case and that timely motion to reconsider asked him to alter, amend, or adjust his ruling because of an error. Right, but you didn't ask for a stay of enforcement or a stay of that pending reconsideration. So would you agree that it was still in effect at the time of the filing back in Arizona? It's in effect. If you look at November 13th, the year 2000, when the bankruptcy was filed in Arizona, all we could say is there was an order issued by the California bankruptcy court that prohibit a filing for 180 days. So at the time the bankruptcy was filed, there was no finding of the prohibition. Yes, however, if you read the, I'm sure you read all the pleadings we've had here, basically we indicated that the 180-day bar date was created, number one in California, by error. It should never have been there in the first instance because there was no finding of a bad faith filing in California. This was purely, Your Honor, a jurisdictional matter. To go into a 13, you have to be under a certain threshold level of debt. And the case was dismissed by Judge Russell in California on the basis of one's eligibility. However, the move-on's counsel in the California case stuck a 180-day bar date in the form of order, which should not have been there in the first instance. Well, I, you know, whether it should or not, should or shouldn't have been there, it was approved, correct? It was approved and then immediately, timely. And the attorney, we have him both acting pro se and with an attorney, so we have to sort this out. He has an attorney in California. Correct. And the 180 days submitted, correct? Right. And as I understood it, bad faith was argued, even though your argument, of course, is bad faith wasn't a warranted finding, but it was argued, correct? It was argued, but the Judge Russell in that decision gave Dr. Yamali an opportunity to, one, either dismiss this 13 or convert it to an 11 where you don't have the jurisdictional limits here. I mean, obviously a decision was made that since this property involved in the underlying case was an Arizona piece of property, he was probably better suited to have always filed his bankruptcy in Arizona. He lives in California. That's why the case was there. But we are dealing with Arizona real estate law. The case should have always been really an Arizona case. But there was some kind of passing reference in the briefs that Dr. Yamali's counsel perhaps didn't get notice. Is that, where is the documentation of that? Well, it would have been in the court below, and that would have just been in the form of order. That order was live. Now, I'm not California counsel. We did assist California counsel on the emergency motion to reconsider. But that doesn't quite answer my question. I mean, you can't just sort of say we didn't get notice, and yet the order was submitted, it was approved, the judge signs the order. Right. We don't have any evidence in the record that California counsel, whomever they were, didn't receive notice, do we? No, we don't. Okay. So we can't really go on that. No, you don't have that by form of an affidavit, which is part of the excerpt before the court, on that rule. But is an order... You know, I mean, we have this situation where he, it's almost like he's fraudulently invoking the bankruptcy court because he dismisses the one and goes to California. He has counsel. And then without even telling his lawyers, which happens a lot. I know people do things without telling their lawyers. But then he rushes over to Arizona, and on the eve of this judgment, files yet a third bankruptcy. So I'm having a little trouble understanding why the district judge should be overruled on that point. Take a step back. All right. What you have is a case is dismissed in California sometime in around October of 2000 with a 180-day bar date, which should not have been in there. At the same time, the Hany, Mr. Parder's client's here, knowing that there's a motion to reconsider the California bankruptcy case, finds a date in the Superior Court of Maricopa County to get there on their judicial foreclosure action, to get to the courthouse before something happens on that pending motion to reconsider in California. So you have the parties all jockeying to a court. Is there anything legally improper about what they did, even though it might not sit right? No. And there's nothing illegal about Dr. Yamali timely, remember, timely filing a motion to reconsider. I wish she had filed a motion for stay of enforcement. Yes. That is, California lawyers. And I wish California counsel would have also objected to the form of order that was filed there. But there was no, she wasn't a bankruptcy attorney, did not object to the form of order. Whether she got noticed or not, it should have been an emergency in front of Judge Russell. Judge Russell never even conducted a hearing in California on the motion for the reconsideration. He read it. He didn't like the case to begin with, but he said that was an error and should not have been entered. Now, we also have matters which are not before the court on the record is that there has been a subsequent visit to Judge Russell. Unfortunately, we can't get into that. As much as we'd like to know, we can't. I know. We're curious. And it came out later. But the issue here is, as Judge Marler, I believe, is correct at the bankruptcy court level, that judges have the right on a timely request under Rule 59 or Bankruptcy Rule 7023 to alter or amend their order. And what Judge Marler indicated at the lower level here was the fact that the judge did, in fact, vacate his order, making the bankruptcy valid. I guess the question in my mind is whether or not that could be done retroactively to eviscerate the foreclosure in Arizona. Is the term retroactive the correct term, though? Was it retroactive, or you have an order that two days after the bankruptcy filing in Arizona, and we didn't know the timing of when Judge Russell was going to rule on that motion to reconsider, because there was no hearing scheduled, he vacated the order. So what's the effect, I submit to the court? What's the effect of vacating an order? It maybe has the tendency of being retroactive. Did he mean by taking it off that it never was meant to be there in the first place? Judge Broomfield of the district court says, like you're arguing your position to me today, is on the day he filed on November 13th, there was a bar, but he vacated it two days later. Did he mean when he vacated it two days later? It was a mistake. It should never have been there. It wasn't asked for. It wasn't pled. It wasn't part of the record. And now Dr. Yamali's fundamental rights to be protected by a bankruptcy violated, his due process rights violated, because the judge made a mistake, corrected that mistake, but could not correct the mistake, and the bankruptcy had to be filed in Arizona, because there was a judicial foreclosure pending. And that makes sense. Did you want to save some time for rebuttal? And there's a second appeal. Well, we have the briefs, and so we've obviously gone through the whole timeline on the appeals, but we'll give you some time for rebuttal. Thank you. And if you also want, at that point, to focus on the second appeal, you're welcome to do that as well. I will do that. Thank you. Good morning, Your Honors. My name is Paul Harder. I represent Mr. and Mrs. Dinani in this appeal. We believe the issue that the court began discussing is exactly the issue which it should focus upon. Not every individual is entitled to file a bankruptcy in this country. You must be eligible under the code definition of Section 301. In this case, Dr. Yamali was not eligible to file on November 13, 2001. There is no dispute on that fact. Judge Russell had entered his order. Eligibility did not exist. In your view, what was the effect of the vacation of that order with the judge's statement that it never should have been entered? That on November 15th and any time thereafter, Dr. Yamali would be eligible to file a bankruptcy. In our view, the Cortez case, which we have cited, is a controlling principle in this case that an individual who files a bankruptcy petition who is not eligible to file does not derive the benefits afforded by Section 362. I guess the question, I mean, it does seem admittedly unfair that the bar was lifted. So why couldn't that relate back to his filing on the third petition? Because the court made no express finding that the lifting should relate back to an earlier point in time. During the intervening time, rights had vested via the foreclosure judgment. Dr. Yamali knew that he was at risk. Dr. Yamali made the conscious decision to not tell his state court attorney that he had filed 30 minutes before state court convened. State court Judge Yarnell expressly asked Dr. Yamali's attorney in substance, is there any reason we cannot proceed today to judgment? Dr. Yamali's attorney said, there is no reason we cannot proceed to judgment. We believe that it is not an unfortunate set of circumstances. This is a situation where an individual has failed to pay taxes on properties for 15 years. Judge Marler listed those in his findings. I don't mean to repeat those. The property was run down. It was uninsured. There was no plan of reorganization. This is a case of a property owner who abused the privileges afforded by the bankruptcy code. He chose, chose to not disclose what had occurred. He chose not to object to Judge Russell's order. He chose not to get a stay. He chose not to tell state court Judge Yarnell that a new case had been filed. Rather, he sat idly by hoping that he would get some relief. I also think it's instructive that you look at Judge Russell's comments when he talks about great reluctance to set aside the bar order. Obviously, something had occurred in that proceeding. I wasn't present. But something had occurred that raised his level of awareness that perhaps there was some untoward conduct that was being perpetrated on the court. But he nevertheless said, reluctantly, I will lift the bar. He didn't say, reluctantly, I will lift the bar retroactive. And I think that's the important point of this because, as Judge Broomfield pointed out, I believe it is the policy of this court, the United States Supreme Court, has announced that in the Bowen v. Georgetown case that we've cited, that retroactivity is generally disfavored. And the reason for that is we have an ordered society and an ordered set of jurisprudence that relies upon facts as they exist at any moment in time. And the moment in time was November 13th. Dr. Umali was not eligible. State Court Judge Yarnell inquired, is there any reason, any reason to not proceed with this foreclosure judgment? Had Dr. Umali been forthcoming and advised his state court attorney that, yes, I did file a Chapter 13 30 minutes ago, had raced from the bankruptcy court in Phoenix to the Superior Court building and advised his attorney, I filed. At that point, anybody would have said, wait a minute, let's take one step back and examine the effect of that. We are not going to proceed today. Dr. Umali chose not to do that. So in response to the court's question, the concept of retroactivity should be utilized in rare, unusual circumstances. And when the court tells the parties that the decision will be given retroactive effect. Also, I'd like to point out what we did mention, the Lennox case. Do you know whether the order that was issued in California was a form submitted by Dr. Umali or whether it was a court-mandated order? I don't recall that. I do not know the answer to that question, Your Honor. I apologize. We can look in the record. The Lennox case is important because it talks about, in the Nagle case, talk about the application of an order on a retroactive basis and the effect that it may have on rights or positions which are vested or become vested in the interim. In this case, there was a deed issued. The judge directed that a deed be issued on this property and that the property change hands from Umali to Denani. To now, two and a half years later, say we are going to revise everything which has occurred and restore the parties to the condition that existed on the close of business on April 12th would divest the Denanis of rights which vested in the interim. Dr. Umali could have avoided the predicament in which he finds himself, and I think the court properly pointed that out, obtain a stay or appeal the state court judgment. He chose not to appeal the state court judgment. This is a collateral attack on a valid state court judgment. That judgment was valid. Under state law, he had 30 days in which to file his notice of appeal. He did not file the notice of appeal. This is nothing more than a collateral attack on the judgment. We suggest that Judge Broomfield's analysis of retroactivity was, in fact, correct. To do otherwise would be to set aside the longstanding policy, as announced by the Supreme Court, which disfavors retroactivity. We suggest that the filing on November 13th was, in fact, a violation of a valid order of the court. It was close to being a fraudulent act. It certainly was nondisclosed to attorneys who were interested. It was nondisclosed to judges who were interested. It was concealed. It was concealed from those who had the greatest interest. This case is a predicament created by Dr. Umali. Finally, I'd like to also, since Mr. Doudelman may talk about the second appeal, very briefly address that we disagree with his suggestion that the second appeal was a de novo review. Rather, it is a review for abuse of discretion for the judge. It did, in fact, have discretion as to whether or not he would annul the automatic stay. By its very nature, that is a discretionary decision. It was based upon a complete and comprehensive record that was presented to him. Judge Marler made significant findings supporting the decision. We would suggest that any one of those findings individually and all of them collectively lead to the inescapable conclusion that the automatic stay should be annulled. Interestingly, annulment is a very precise, significant term. When an event is annulled, it is as if it never happened. It is a nullity, as if it never happened. So if the court, if this court were to somehow get around the violation of the bar order and then said we disagree with Judge Broomfield, we think Judge Marler was correct, the lifting of the bar order should be given retroactive effect, then you still have the issue of lifting the automatic stay. The automatic stay was lifted because there was no equity, because the property was in significant disrepair, because it was not insured, because there was no plan of reorganization, because everything Dr. Yamali proposed was speculative. Dr. Yamali knew that the annulment was a possible consequence. He had been advised in the order that the court could consolidate the preliminary hearing and make a final decision. That's what occurred. Thank you very much for your time this morning. Thank you. Very quickly, to answer one question you asked of Mr. Harder is that I believe the record would establish that the form of order that was submitted to Barry Russell, Judge Russell in California, was prepared by the move-on, the creditor below, the honey group that was prepared by their lawyer in California. The issue on the order that vacated the prior stay was prepared by the move-on too? No. The form of order vacated was prepared by California Bankruptcy Council for Dr. Yamali. The form of order that put the 180-day bar date in there was the order prepared by the creditor's attorney in the California case. That's what I meant to express. Maybe I missed a question. On the second issue, which was the stay-lift motion, what I think is significant there is that the first motion for retroactive annulment of the stay that was filed by the Highlander Bankruptcy Court was denied by Judge Mahler in the bankruptcy court. The second motion that was filed by Mr. Harder when he came on board in the bankruptcy case, the motion itself did not ask for an annulment. You saw that in the papers you have before you. In fact, Mr. Harder, on page 74 of the excerpts that you have before you, says the owner of the property at this moment is Rene Yamali. There's no doubt about that. We have prepared papers basically to reverse that transfer of the property. At that point in time, Dhani was recognizing the bankruptcy validity, that the foreclosure did not take place, Yamali was the owner of the property, and I'll quote right from page 75 of the excerpt. This is Mr. Harder speaking. What we're asking you to do is lift the stay, at which point in answer to your question you asked, Mr. Udelman, we will be back in front of Judge Arnell on a short order asking him to enter a judgment of foreclosure, foreclosing all of Dr. Yamali's interest in the property. So was the reason that Dr. Yamali, the owner of the property, was because the redemption period had not expired? It's not so much a redemption period. We get lost in the term redemption all the way through this because the lawyers have been using that term. We really have until the property is conveyed, you could go in and pay the money to the treasurer. We had a foreclosure. This was a tax lien foreclosure, not your typical judicial foreclosure. The hearing was at 930 in the morning. The bankruptcy was at 915 in the morning on November 13, 2000. After that hearing, certain things have to happen. You have about 20 seconds, so you might want to decide what you want to do. So deeds have to be conveyed. The problem is that our due process rights were denied in the fact that the bankruptcy was justified by Judge Marler. There was no reason to file an appeal in a state court matter. And then as a result of Judge Marler's subsequent ruling on a lift stay that did not seek retroactive annulment, all the time for Dr. Yamali to go back to state court to seek a motion to reconsider, to file an appeal, those rights are gone. They're moot because all the way through the process, that bankruptcy was legitimized by Judge Marler. It was only later reversed. So all his rights in state court to fight the loss of his property through the state court system have been lost as a result of a subsequent order, and he can't go back and revisit that in state court. All right, I think we have that second appeal in mind as well. Thank you. Thank you. The case of Yamali v. Takani is submitted.
judges: Ferguson, McKeown, Rawlinson